UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHARINE LAMBERT,

    Plaintiff,

v.

CAPRICE INC. d/b/a Roto-Rooter
Plumbing & Drain Services,
ROTO-ROOTER GROUP, INC.,
and CHEMED CORPORATION,

    Defendants.

Case No. 25-cv-
Hon.

---

ERIC STEMPIEN (P58703)
MALLORIE M. BLAYLOCK-DANNA (P84331)
STEMPIEN LAW, PLLC
Attorneys for Plaintiff
38701 Seven Mile Rd., Suite 445
Livonia, MI 48152
P/F: 734-744-7002
eric@stempien.com
mallorie@stempien.com

---

**COMPLAINT AND JURY DEMAND**

    Plaintiff, KATHARINE LAMBERT, by and through her attorneys, Stempien Law, PLLC, hereby complains against Defendants, CAPRICE INC. d/b/a Roto-Rooter Plumbing & Drain Services, ROTO-ROOTER GROUP, INC., and CHEMED CORPORATION, jointly and severally, and in support thereof states:

1

1. Plaintiff KATHARINE LAMBERT ("Lambert" or "Plaintiff") is a resident of the County of Oakland, State of Michigan.

2. Defendant, CAPRICE INC. d/b/a Roto-Rooter Plumbing & Drain Services ("Roto-Rooter" or "Defendant") is a for-profit domestic corporation which conducts systematic and continuous business in the County of Wayne, State of Michigan; its resident agent for service of process being: Sharon Delli, 12898 Westmore Street, Livonia, Michigan 48150.

3. Defendant, ROTO-ROOTER GROUP, INC., is a for profit corporation which conducts systematic and continuous business in the County of Wayne, State of Michigan and with its corporate headquarters located at: 2500 First Financial Center, 255 East Fifth Street, Cincinnati, Ohio 45202.

4. Defendant, CHEMED CORPORATION, is a foreign for-profit corporation; its resident agent for service of process being: Corporation Service Company, 1160 Dublin Road, Suite 400, Columbus, Ohio 43215.

5. Jurisdiction is vested with this Court pursuant to 28 U.S.C. §1331, 42 U.S.C. §2000e, et. seq., and 28 U.S.C. §1367.

6. The events giving rise to this action occurred within the Eastern District of Michigan.

7. On or about December 19, 2023, Lambert filed a Charge of Discrimination with the Michigan Department of Civil Rights ("MDCR").

8. On or about September 17, 2025, the Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights letter to Lambert for her Charge of Discrimination.

## **GENERAL ALLEGATIONS**

9. On or about July 15, 2023, Lambert began her employment with Defendants, CAPRICE INC. d/b/a Roto-Rooter Plumbing & Drain Services, ROTO-ROOTER GROUP, INC., and CHEMED CORPORATION ("Defendants"), as a Restoration Division Project Manager.

10. Lambert continued to hold her position as Restoration Division Project Manager until her employment was terminated.

11. During her tenure as a Restoration Division Project Manager, Lambert was subjected to harassment, discrimination, and retaliation based on her sex.

12. Throughout Lambert's employment with Defendants, she was subjected to pervasive and severe sexual harassment, primarily by her supervisor and boss, Bill ("Bill").

13. Bill's sexual harassment intensified once Lambert had to take one day off work, on November 3, 2023, because her daughter was ill, in the ER, and required supervision.

14. Bill asked Lambert about her personal life at first, specifically, her daughter's health.

15. Bill asked Lambert to have sex with him; Lambert refused.

16. Bill asked to hold Lambert's hand; Lambert refused.

17. Bill instructed Lambert to only communicate with him or her manager about her jobs, not her male coworkers.

18. Notwithstanding the fact that that Lambert and her male coworkers would have to communicate by phone while Lambert and/or her coworkers were on the road and working out of the office a majority of the time, Bill told Defendants' male employees that they were not allowed to have Lambert's phone number.

19. Defendants made efforts to interfere with Lambert's pay on the basis of her sex, female, and because she reported and opposed sexual harassment.

20. Defendants provided Lambert's male coworkers with a work phone, as well as an iPad for signing contracts, but Lambert was provided with only an iPad, which did not have necessary text message or phone call capabilities.

21. At the onset of Lambert's employment with Defendants, Lambert was entitled to minimum base pay which would automatically terminate after six months of employment.

22. During this initial six-month employment period, Lambert was entitled to her minimum base pay, as well as commission-based pay.

23. After this initial six-month employment period, Lambert's pay structure was entirely commission based.

24. Lambert's commission-based pay structure provided that she was to receive a corresponding increase in pay when her sales increased.

25. Lambert's contract with Defendants provided for a 6% commission on each job she secured for Defendants.

26. Lambert repeatedly asked Defendants about her jobs and what percentage payout she was to receive with her pay structure, but was denied necessary information, such as the total contract price, which stopped Lambert from determining how much money constituted 6% of the total contract price and how much money she was to earn in commission.

27. Lambert was advised that her male co-workers were receiving a 12% commission, versus Lambert's 6% commission.

28. Bill intentionally withheld information from Lambert concerning her pay structure, to have a reason to communicate with her, and in an effort to force Lambert to become reliant on him.

29. Throughout Lambert's employment with Defendants, her pay was never consistent, and she was denied a breakdown of her pay with no explanation.

5

30. Lambert requested documentation regarding her assigned jobs and payouts, but her request was denied, whilst her male counterparts received documentation regarding their assigned jobs and payouts.

31. In or about early December 2023, Lambert's pay was extraordinarily low, even though she should have still been receiving her minimum base pay on top of commission.

32. Lambert asked Bill why her pay was so low, and Bill told Lambert that he would pay her himself, on his own.

33. Accordingly, Bill made efforts to have Lambert rely on him monetarily.

34. On or about December 15, 2023, Bill asked Lambert to have sex with him and asked her how much money she would want to be paid for sex; Lambert refused and told Bill, "I'm not a hooker."

35. Bill's sexual harassment was so severe and pervasive that Lambert would become physically sick.

36. On or about December 18, 2023, Lambert reported the sexual harassment to Project Manager Jason Holmes ("Manager Holmes") who was Lambert's manager and supervisor.

37. On or about December 18, 2023, Lambert provided Manager Holmes with Bill's sexual and harassing text messages as proof of the sexual harassment.

38. On December 20, 2023, Lambert made a written request that Manager Holmes provide her with Defendants' Human Resources ("HR") contact information.

39. Manager Holmes told Lambert, "I don't know if we have a HR. I know Tim is a recruiter and I know John is corporate. Anytime I needed something I went directly to who writes my checks. I went to bill!"

40. As such, Manager Holmes instructed Lambert to report Bill's sexual harassment to the person sexually harassing her, Bill, who is also the owner of his division at work.

41. On December 20, 2023, Manager Holmes admitted in writing to Lambert, "I understand that you're being sexually harassed."

42. On December 20, 2023, Manager Holmes advised Lambert that he spoke to Bill about his text message asking Lambert to sleep with him for money.

43. Manager Holmes instructed Lambert to continue sending any record of the harassment to him, directly.

44. Lambert asked Manager Holmes to provide her with the phone number of Defendants' corporate employee and Project Manager, Jon Crow ("Project Manager Crow").

45. Manager Holmes refused and told Lambert that, "[t]he owner [S]am has been made aware and you can deal with him directly."

7

46. Lambert again asked Manager Holmes for Project Manager Crow's phone number.

47. Manager Holmes replied stating again, "[t]he owner [S]am has been made aware and you can deal with him directly."

48. Lambert told Bill to stop sexually harassing her, specifically stating that his comments needed to stop.

49. On or about a date in December 2023, after Lambert reported the sexual harassment to Manager Holmes, Manager Holmes reported the sexual harassment to upper management, including but not limited to Project Manager Crow.

50. No corrective action was ever taken in response to Lambert reporting the sexual harassment to any of Defendants' employees or agents.

51. No corrective action was ever taken in response to Manager Holmes reporting the sexual harassment to Defendants' upper management.

52. In or about mid-December 2023, Lambert took a few days off work for medical reasons and provided Defendants with a doctor's note concerning this medical absence.

53. On or about December 22, 2023, Jim asked Lambert 'for a talk'; Jim asked Lambert, 'do you even want to keep working here?'; and Lambert told Jim that she has children and has to work.

8

54. Jim then advised Lambert that, because she took work off for more than three days, her employment was terminated.

55. On or about December 22, 2023, Lambert was terminated from her employment with Defendants.

56. After Lambert's termination, she sought unemployment insurance benefits.

57. Lambert was denied unemployment insurance benefits because Defendants falsely advised the Unemployment Insurance Agency that Lambert walked off the job, further exacerbating Lambert's damages, mental anguish, and emotional distress.

58. As a direct result of Defendants permitting the hostile work environment and sexual harassment to continue, Lambert suffered severe mental anguish and emotional distress.

59. On or about December 28, 2023, Lambert's physician recommended that she undergo therapy due to the severe mental anguish she was suffering from as a result of her employment conditions.

60. Lambert did not solicit or entice the sexual conduct or communication.

61. Lambert would not have been subjected to the sexual conduct or communication but for the fact of her sex.

62. The employment disciplinary actions taken against Lambert prior to her discharge were all because of her reporting and opposing sexual harassment.

63. Defendants' discharge of Lambert was pretext for discharging her because she reported and opposed violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. §37.2101 et seq.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT (SEXUAL HARASSMENT)

64. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

65. At all material times, Plaintiff was an employee, and Defendants were her employers, covered by and within the meaning of 42 U.S.C. § 2000e et. seq.

66. Plaintiff was sexually harassed throughout the course of her employment, including but not limited to unwelcome comments and conduct of an offensive and sexual nature directed at Plaintiff and the creation of a hostile work environment.

67. Plaintiff complained about the harassment and the events described above to Defendants.

68. The sexual harassment was severe and pervasive.

69. Defendants did not promptly remedy the ongoing sexual harassment when Plaintiff complained.

70. Defendants permitted the sexual harassment to continue.

71. The conduct of Defendants' employees and agents in sexually harassing Plaintiff constitutes sexual harassment and discrimination in violation of 42 U.S.C. § 2000e et. seq.

72. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorneys fees.

## COUNT II – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT (SEX DISCRIMINATION)

73. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

74. At all material times, Plaintiff was an employee, and Defendants were her employers, covered by and within the meaning of the ELCRA.

75. The ELCRA prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment, because of the employee's sex. M.C.L. §37.2202(1)(a); M.C.L. §37.2103(i) ("Discrimination because of sex includes sexual harassment.").

76. The ELCRA also prohibits employers from segregating or classifying employees in a way that would tend to deprive them of opportunities on the basis of their sex. M.C.L. §37.2202(1)(b).

77. Defendants' policies and practices, as fully explained herein above, served to exclude Plaintiff from valuable professional and personal development opportunities on the basis of her sex.

78. As a result of sex discrimination, Plaintiff was subjected to unlawful solicitation of sex.

79. As a result of sex discrimination, Plaintiff's male co-workers were not permitted to have Lambert's phone number, Plaintiff was not issued a work phone, Plaintiff did not receive the entire initial 6-month base pay she was entitled to, Plaintiff was not paid the full commission she was entitled to, Plaintiff was denied basic information concerning her pay and pay structure, Plaintiff was denied documentation regarding her assigned jobs and payouts, and Plaintiff was urged to monetarily rely on her sexual harasser.

80. As a result of sex discrimination, Plaintiff lost out on the opportunity to make new professional contacts in her field, to be free from sexual advances and conduct, to be gainfully employed, and to establish trusting relationships with persons in supervisory and authoritative positions, among others.

81. As a result of sex discrimination, Plaintiff was instructed to report sexual harassment to the male employee who was sexually harassing her, and she was denied contact with any HR personnel.

82. As a result of sex discrimination, Plaintiff was subject to sexual conduct and communication when other male employees were not.

83. As a result of sex discrimination, Plaintiff was terminated from her employment.

84. As a result of sex discrimination, Plaintiff was subject to humiliation, embarrassment, and objectification.

85. Plaintiff requests relief from this Honorable Court in her favor and against Defendants as follows:

    a. declare that Defendants' policies and practices as fully explained herein above unlawfully segregate and classify employees because of sex;

    b. enjoin Defendants from continuing said policies and practices;

    c. award damages to Plaintiff that reflect her economic losses;

    d. award Plaintiff compensatory damages for her humiliation;

    e. award Plaintiff punitive damages reflecting the blatant disregard Defendants demonstrated for Plaintiff's rights under the ELCRA;

    f. award Plaintiff attorney fees, witness fees, and costs; and

    g. grant any other relief the court deems appropriate or necessary.

### COUNT III – SEXUAL HARASSMENT (HOSTILE SEXUAL ENVIRONMENT)

86. Plaintiff hereby incorporates by reference and realleges all previous paragraphs of this Complaint as if fully set forth herein and further states that:

87. Plaintiff belongs to a protected group because of her sex.

88. Plaintiff was subjected to unwelcome communication and conduct on the basis of her sex.

89. The unwelcome sexual conduct and communication was intended to or in fact did substantially interfere with Plaintiff's employment or created an intimidating, hostile, or offensive work environment.

90. Defendants' employees' sexual statements, advances, solicitation of sex, conduct, and communications were offensive to Plaintiff and would have been offensive to a reasonable person.

91. These circumstances created a sexually hostile environment and constitute sexual harassment.

92. Defendants had actual knowledge and reason to know of Bill's sexual harassment.

93. Defendants took no action to investigate or to protect Plaintiff despite having actual knowledge of Bill's sexual harassment.

94. By an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring.

95. Defendants had adequate and reasonable notice of the harassment and failed to take appropriate corrective action.

96. Defendants are liable under the doctrine of respondeat superior.

97. Defendants provided Plaintiff with no reasonable avenue for relief.

98. Plaintiff was terminated from her employment when the sexual harassment persisted.

99. As a proximate result, Plaintiff suffered economic and non-economic damages, and has suffered and may continue to suffer mental and emotional distress, and has suffered and may continue to suffer career harm.

100. As a proximate result, Plaintiff suffered injury and damage, past, present, and future, including the following:

    a. pain, suffering, and emotional distress;

    b. humiliation, mortification, and embarrassment;

    c. medical expense;

    d. actual wage loss and lost earning capacity; and

    e. other injuries and damages and consequences that are found to be related that develop or manifest themselves during the course of discovery and trial.

**COUNT IV – SEXUAL HARASSMENT (QUID PRO QUO HARASSMENT)**

101. Plaintiff hereby incorporates by reference and realleges all previous paragraphs of this Complaint as if fully set forth herein and further states that:

102. Plaintiff belongs to a protected group.

103. Plaintiff was subjected to communication and conduct on the basis of sex.

104. Plaintiff was subjected to unwelcome sexual conduct and communication.

105. Submission to, or rejection of, Bill's solicitation of sex, sexual statements, advances, conduct, and communications were used as factors in decisions relating to Plaintiff's job benefits, as fully explained herein above.

106. Plaintiff was subjected to unwelcome sexual harassment in the form of sexual advances and requests for sexual favors.

107. Plaintiff's submission to the unwelcome advances was an express or implied condition for receiving job benefits.

108. Plaintiff's refusal to submit to Bill's sexual advances and solicitation of sex resulted in a tangible job detriment.

109. Bill was in a position to offer tangible job benefits in exchange for sexual favors or, alternatively, threaten tangible harm for a failure to submit to the prohibited conduct or communications.

110. Bill's sexual statements, advances, solicitation of sex, conduct, and communications were made in his capacity as an agent of Defendants'.

111. These circumstances, as fully explained herein, constitute quid pro quo sexual harassment.

112. Defendants are strictly liable for the conduct of its supervisory employees, including Bill, because he has authority over hiring, advancement, dismissal and discipline.

113. Defendants are strictly liable for the quid pro quo harassment of Plaintiff.

114. As a proximate result of the quid pro quo harassment, Plaintiff suffered economic and non-economic damages.

115. As a proximate result of the quid pro quo harassment, Plaintiff has suffered and may continue to suffer mental and emotional distress and has suffered and may continue to suffer career harm.

116. As a proximate result of the quid pro quo harassment, Plaintiff suffered injury and damage, past, present, and future, including the following:

    a. pain, suffering, and emotional distress;

    b. humiliation, mortification, and embarrassment;

    c. medical expense;

    d. actual wage loss and lost earning capacity; and

    e. other injuries and damages and consequences that are found to be related that develop or manifest themselves during the course of discovery and trial.

## COUNT V – VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT
## (RETALIATION)

117. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

118. Plaintiff engaged in protected activity when she complained to Defendants about sexual harassment, as fully described above.

119. Plaintiff's protected activity was known to Defendants.

120. Defendants failed and refused to take any action regarding the sexual harassment of Plaintiff.

121. Plaintiff suffered adverse employment actions, including but not limited to reprimand and discharge.

122. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

123. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorneys fees.

## COUNT VI – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT
## (RETALIATION)

124. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

125. Plaintiff engaged in protected activity when she complained to Defendants about the sexual harassment by Defendants' employee, as fully described above.

126. Plaintiff's protected activity was known to Defendants.

127. Defendants failed and refused to take any action regarding the sexual harassment of Plaintiff.

128. Plaintiff suffered adverse employment actions, including but not limited to reprimand and discharge.

129. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

130. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorneys fees.

WHEREFORE, Plaintiff, KATHARINE LAMBERT, prays that this Honorable Court enter judgment in her favor against Defendants, CAPRICE INC. d/b/a Roto-Rooter Plumbing & Drain Services, ROTO-ROOTER GROUP, INC., and CHEMED CORPORATION, jointly and severally, in an amount that this Court deems fair and just, plus costs, interest and attorney fees.

## **JURY DEMAND**

Plaintiff KATHARINE LAMBERT hereby demands a trial by jury of the within cause.

                                                  Respectfully submitted,

                                                  STEMPIEN LAW, PLLC

                                                  */s/ Mallorie M. Blaylock-Danna*
                                                  Mallorie M. Blaylock-Danna (P84331)
                                                  Attorney for Plaintiff
                                                  38701 Seven Mile Rd., Suite 445
                                                  Livonia, MI 48152
                                                  P/F: 734-744-7002
                                                  mallorie@stempien.com

Dated: December 8, 2025